## MOERS *v.* MICHIGAN UNITED RAILWAYS CO.

1. PARTIES—JOINT DEFENDANTS—DISCONTINUANCE AS TO ONE DEFENDANT—AMENDMENT OF DECLARATION—TIME TO PLEAD.

Under a declaration containing four counts, of which the first two joined the railway company and a municipality as defendants in an action of negligence, and the second two, added by amendment, charged the railway company alone with neglect, it was properly held by the trial judge that the several counts might be tried alone after discontinuing the case against the municipality, and that the case was at issue as to the amended counts on a plea filed to the two original counts, and not amended or replaced by a demurrer within ten days, under Circuit Court Rule 10a.

2. DAMAGES — NEGLIGENCE — ESTATES OF DECEDENTS — PROFITS — PARENT AND CHILD.

In estimating the damages sustained by a father, whose minor son was in his employ at the time of his death from negligence of the defendant, the profits which he made from his son's labor and could have secured by employing a substitute for the deceased, should not be included.

3. NEGLIGENCE—STREET RAILWAYS—CARRIERS—RIDING ON PLATFORM OR RUNNING BOARD—JOINT LIABILITY—PROXIMATE CAUSE.

The deceased, while riding on the running board of defendant's street car, which the evidence showed to have been crowded, was swept off by another passenger who was riding in a similar situation, and who was struck by a pile of bricks left close to the track by the municipality in whose streets the railway company operated its cars. The bricks had been so situated for several weeks, during which time the defendant operated its cars with reference thereto. The trial court refused to submit to the jury the question of the negligence of the municipality as the proximate cause of the accident, and charged that if the brick were piled so close to the railway track as to endanger passengers riding upon the steps or running board of the defendant's cars, its duty to its passengers required it to warn them of the danger, and not to permit passengers to remain in a position upon its cars where they might come in contact with the piles of brick. *Held*, that the ruling and instructions were proper.

Error to Ingham; Wiest, J. Submitted June 10, 1909. (Docket No. 39.) Decided December 10, 1909.

Case by Peter J. Moers, administrator of the estate of Edward J. Moers, deceased, against the Michigan United Railways Company for the negligent killing of plaintiff's intestate. A judgment for plaintiff is reviewed by defendant on writ of error. Reversed.

*Sanford W. Ladd*, for appellant.

*John J. Zimmer* and *Frank L. Dodge*, for appellee.

MOORE, J. This action is brought by Peter J. Moers, as administrator of the estate of Edward J. Moers, deceased, against the Michigan United Railways Company

and the city of Lansing for damages arising out of the instant death of the decedent on the 2d day of September, 1907 (Labor Day), while a passenger on one of the cars of the Michigan United Railways Company, in the city of Lansing, on Michigan avenue. Plaintiff's decedent, at the time of the accident, was seated on the step with his feet on the running board; the steps and running boards being from eight to twelve inches wide. Several other boys were seated on the north side of the motor car on the steps and running boards of the motor car, one of whom, Edward Daman, was seated nearer the front of the car, and he also was killed. Several weeks prior to the date of the accident, the city of Lansing had been removing the brick in the pavement from between the tracks of the Michigan United Railways Company and piling them on each side of the company's track in the street along Michigan avenue. The bricks were removed from the pavement and replaced in the pavement and piled along the tracks by men employed by the city of Lansing and under the supervision of the superintendent of public works of the city of Lansing, who, in turn, received his instructions from the committee of the common council appointed for this purpose. Whether Edward Moers, plaintiff's decedent in this case, was hit by the bricks and thus knocked off, or whether Edward Daman, after being knocked off from where he was sitting on the car, grabbed Edward Moers in passing and thus Moers was pulled from the car by Daman, is a disputed question.

The plaintiff originally filed his declaration with two counts against the city of Lansing and the Michigan United Railways Company. Plaintiff afterwards amended his declaration by adding two counts against the railways company alone. The jury returned a verdict in the sum of $1,846.28, upon which verdict judgment was entered. The case is brought here by writ of error.

After the jury were sworn, the plaintiff discontinued the case as to the city of Lansing. The defendant then moved

that the case be discontinued as to it, for the reason that the first and second counts were joint counts against it and the city of Lansing, and, the later counts being only against the appellant, the several counts could not be combined in one declaration. This motion was overruled. Another motion was made. We quote from the brief of counsel:

"This motion being denied, the defendant railways company moved for a continuance of the case on the grounds that the third and fourth counts of the declaration were not at issue for the reason that the rule would not operate to enter the plea theretofore entered to the first and second counts of the declaration, for the reason that the first and second counts were joint counts and joint only, the third and fourth counts were several counts and several only, and that the same plea could not be entered to the third and fourth counts that had been entered to the first and second counts."

This motion was also overruled. It is claimed the court erred in the disposition of each of those motions. This contention is decided against the appellant in the case of *Michigan United Railways Co.* v. *Ingham Circuit Judge,* 155 Mich. 478 (119 N. W. 588).

The second group of assignments of error requiring notice grow out of the admission of certain testimony of the plaintiff, an example of which is as follows:

"*Q.* I want to ask you at the time of your son's death what were his services and time reasonably worth to you per day?

"*Mr. Ladd:* If your honor please, I object to that for the reason that it does not incorporate in the question, or it does not eliminate from the question the profit which an employer is entitled to from the services of his employés, and the loss sustained by Mr. Moers would be the loss occasioned by the loss of his son, and what he could get another to take the place and do like work for. * * * The question should be what Mr. Moers was paying his son, or, at least, what he could get another man to take his place for, not what he received by virtue of his services as an employer.

"*Q.* I will ask it with a slight variation, for the services

such as you have described that your son rendered for you and your business, what were they fairly and reasonably worth per day?

"*A.* Well, he would be worth—

"*Q.* To you?

"*A.* Four dollars a day to me."

Defendant requested the court to charge as follows:

"If you come to the question of damages, I instruct you that, in determining the earnings of Edward J. Moers, you shall not take into consideration the profit of which Peter J. Moers, his father and employer, made upon the services of his son as an employé in his concern."

This was not given except as covered in the general charge. It is insisted that this action allowed profits to enter into the verdict which should not have been allowed. Upon that feature of the case the jury were charged:

"The plaintiff sues as administrator of the estate of Edward J. Moers, deceased, and seeks to recover such damages as you, gentlemen, under the evidence, shall deem fair and just with reference to the pecuniary injury resulting from such death to his father and mother. Edward J. Moers at the time of his death left a father and mother. His father and mother in case you award damages in this action to the plaintiff will take such damages in equal shares, provided it is reasonable to expect they will live during the period Edward J. Moers would have lived, had he lived to reach 21 years of age. * * *

"The damages, if any, awarded in this case, have reference only to the pecuniary injury resulting from the death of Edward J. Moers to his father and mother, and are limited to the period from the date of his death to the day he would have reached the age of 21 years, had he lived, and will not go that length unless it is reasonable to expect, and you so find from the evidence that had Edward J. Moers not have met with this accident he would have lived to reach the age of 21 years. * * *

"If you come to the question of damages, it is your duty to take into consideration the age of Edward Moers and the experience he had had, the wages he could have commanded had he lived, with his degree of experience and knowledge. Had Edward J. Moers lived, what wages would he have been able to earn up until he was

21 years of age, if it is reasonable to expect he would have lived to be that age ? What would have been the expense of his maintenance, his clothing, his board, his washing, and those things incident to life ?"

The same rule was stated in various forms. Ordinarily the above statements would be regarded as a statement of the rule of damages. At the time of the accident decedent was 18 years and 4 months old. The testimony varied as to the wages he could earn. The amount of the judgment indicates that the jury may have acted upon the statement of the father that the young man's services were worth to him $4, which would include a profit upon the work he did. In view of the testimony which was allowed to remain in the case, we think the request which we have quoted should have been given. It is obvious that a like profit could have been made upon the services of another employé.

The other group of errors requiring attention is covered ·by the following quotation from the brief of counsel:

" The brick knocked the boys from the car. The brick was piled in the street by the city. The city can compel the railways company to operate its cars. Can it be said that the proximate cause of this accident was not the brick that was piled in the street by the city officials? We submit not, and that the record discloses that at least it should be a question of fact to be submitted to the jury as to whether or not the proximate cause of the accident in question was not the piling of the brick along the tracks of defendant railways company in the street along Michigan avenue that caused this accident, and that the circuit judge in refusing the requests of the defendant railways company and charging as already pointed out in the several paragraphs of his charge committed an error which was prejudicial to the defendant railways company beyond all shadow of doubt, and that for this reason this case should be reversed, if for no other."

The jury were charged as follows:

" Evidence has been introduced showing the city of Lansing piled the brick alongside of the railway track, and that the railway company has the right to use the

street; that is, the railway · company and the street car system.   If the city of Lansing piled the brick so close to the railway track as to endanger passengers riding upon the step or running boards of defendant's street cars, then it was the duty of the railway company, its duty to its passengers, if any were on the step or running board, to warn such persons of the danger, and not permit them to remain in a position upon its cars where the running of the car might bring them into contact with the brick so piled.   And, if defendant failed under such circumstances to do this, then its negligence or failure of duty to its passengers renders it liable, and it is no excuse for it to say the city piled its brick there."

The jury were fully and properly instructed upon the question as to whether a notice or warning had been given as to the duty of deceased to observe conditions and to exercise due care.

For the error above stated, we think the judgment must be reversed, and a new trial ordered.

GRANT, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.